IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARY DOE, § | | |
| § | | |
| Plaintiff § | | |
| § | CIVIL ACTION NO. 4:18-cv-399 | |
| v. § | | |
| § | JURY DEMANDED | |
| PRAIRIE VIEW A&M UNIVERSITY § | | |
| § | | |
| Defendant. § | | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiff Mary Doe ("Plaintiff") files this Original Complaint and Jury Demand complaining of Defendant Prairie View A&M University ("Defendant" or "Prairie View A&M"). In support thereof, Plaintiff would show the Court as follows:

## I.
## PRELIMINARY STATEMENT

1. At all relevant times, Prairie View A&M received federal funding for its academic programs and activities and was subject to the requirements of Title IX of the Education Amendments of 1972, 20 U.S.C. 1681(a) (hereinafter, "Title IX").

2. Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

3. Title IX is enforceable through an individual's private right of action and allows for the recovery of damages. The United States Supreme Court has held that a school that receives federal funding can be held liable under Title IX for student-on-student harassment. *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999). *Davis* held that a complainant may

prevail in a Title IX damages action against a school in cases of student-on-student harassment where the funding recipient is:

 (a) "deliberately indifferent to sexual harassment of which the recipient has actual knowledge," and

 (b) "the harassment is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school."

*Davis*, 526 U.S. at 650.

4. On April 4, 2011, the U.S. Department of Education, Office for Civil Rights issued its "Dear Colleague Letter" to help universities such as Prairie View A&M comply with the requirements of Title IX, to explain that the requirements of Title IX pertaining to sexual harassment also covered sexual violence, and to explain the specific Title IX requirements applicable to sexual violence.

5. On April 29, 2014, the U.S. Department of Education Office for Civil Rights sent out a second Dear Colleague Letter (FAQs) with specific guidance on University compliance with Title IX and sexual harassment/violence.

6. This case arises from Defendant's deliberately indifferent response to reports of student-on-student sexual assault and subsequent sex-based harassment. Specifically, Defendant's failure to promptly and appropriately investigate and respond to Plaintiff's assault furthered sexual harassment and a hostile environment, effectively denying Plaintiff, and other female students, access to educational opportunities. Plaintiff brings this action to redress a hostile educational environment pursuant to Title IX.

2

## II.
## PARTIES

7. Plaintiff Mary Doe[1] is an individual who, at the time of the sexual assault complained of herein, was a student-athlete attending Prairie View A&M.

8. Defendant Prairie View A&M University is a public university with its campus located in Prairie View, Waller County, Texas. Defendant may be served through its President, Dr. Ruth J. Simmons at the Office of the President, 700 University Drive, Prairie View, Texas 77446 or by serving its registered agent, Jim Davis, Deputy AG for Civil Litigation, Price Daniel, Sr. Building, 8th Floor, 209 W. 14th Street, Austin, Texas 78701.

## III.
## JURISDICTION AND VENUE

9. The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district courts original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), since Defendant resides or resided in this district and the events or omissions giving rise to the claim occurred in this district.

## IV.
## FACTS

11. Plaintiff was a student-athlete at Prairie View A&M University from the spring of 2015 to the spring of 2017.

12. On February 18, 2015, Plaintiff was sexually assaulted by a male Prairie View A&M student-athlete in her on-campus apartment. The next day, Plaintiff reported the sexual

---

[1] "Mary Doe" has been substituted for Plaintiff's name for all causes of action brought through this Complaint which would otherwise publish important privacy interests of Plaintiff. Plaintiff intends to file a Motion to Proceed Under Pseudonym, requesting the Court sign an order allowing her to proceed in the above-captioned matter using a pseudonym after a civil action number is assigned to this case.

assault to the Prairie View A&M University Police Department. Prairie View A&M police escorted Plaintiff to the Houston Methodist Willowbrook Hospital for a sexual assault examination. Plaintiff's coach, a Prairie View A&M employee, met Plaintiff at the hospital and repeatedly told her that she did not need to tell her parents that she was sexually assaulted. Upon information and belief, no further action was taken by Prairie View A&M officials despite the fact that they had knowledge of Plaintiff's sexual assault and the name of Plaintiff's assailant.

13.    Following Plaintiff's sexual assault and unbeknownst to Plaintiff, Plaintiff's assailant fled the state. Within two days of the sexual assault, Plaintiff and her parents met with her Prairie View A&M coach to discuss the sexual assault. Plaintiff and her parents repeatedly asked the coach where the assailant was and whether he had been located. The coach told Plaintiff and her parents that he could not locate the assailant and that he had no information regarding his whereabouts.

14.    Upon information and belief, in March or April of 2015, Plaintiff's coach was either terminated or resigned from his coaching position at Prairie View A&M. The coach told Plaintiff's teammates and others at Prairie View A&M that Plaintiff was responsible for his termination or resignation. As a result, Plaintiff's teammates retaliated against her, accused her of causing trouble, and blamed her for getting the coach fired.

15.    Prairie View A&M's failure to adequately investigate and respond to Plaintiff's sexual assault combined with the harassment and retaliation from Plaintiff's coach and teammates, created a highly hostile educational environment for Plaintiff on a daily basis. Plaintiff endured significant emotional distress and attended counseling with a private counselor unaffiliated with Prairie View A&M.

16. In May 2015, Plaintiff's assailant was located in Florida and indicted on sexual assault charges. On February 11, 2016, Plaintiff attended her assailant's bond hearing. During this hearing, Plaintiff learned for the first time that her Prairie View A&M coach had purchased her assailant an airplane ticket in the immediate aftermath of her sexual assault to assist him with fleeing the State of Texas in an attempt to avoid disciplinary action with Prairie View A&M officials and evade arrest.

17. This was the first time that Plaintiff became aware of Prairie View A&M officials, including her former coach's, misconduct.

18. Prior to this time, Prairie View A&M officials misinformed Plaintiff and actively concealed from Plaintiff the accommodations she was entitled to under Title IX, Prairie View A&M officials' misconduct in handling Plaintiff's sexual assault, Prairie View A&M's affirmative wrongdoing, assistance, and involvement in purchasing her assailant an airplane ticket to enable him to flee the state and avoid arrest, and further investigatory actions that could be taken by Prairie View A&M.

19. Prior to this time, Plaintiff did not and in fact could not have known of the facts and circumstances regarding Prairie View A&M officials' affirmative misconduct and wrongdoing because Defendant actively concealed this information from Plaintiff such that Plaintiff could not obtain this information even with a diligent investigation.

20. Throughout this entire time, Prairie View A&M was clearly on notice of the report that one of their female students, Plaintiff, was raped by another student-athlete.

21. As a result, Prairie View A&M had control over both the offender as well as the context of the ongoing harassment and had the ability to address its effects and prevent its recurrence. Yet, Prairie View A&M did nothing.

## V.
## CAUSES OF ACTION

**A.  VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972, 20 U.S.C. § 1681(A)**

22.     Plaintiff incorporates by reference all preceding facts and allegations set forth above in Paragraphs 1 through 21.

23.     The sex-based harassment articulated in this complaint was so severe, pervasive and objectively offensive that it deprived Plaintiff of access to educational opportunities or benefits provided by the school.

24.     Prairie View A&M created and/or subjected Plaintiff to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) (Title IX) because:

   a) Plaintiff was a member of a protected class;
   b) Plaintiff was subjected to sexual harassment in the form of sexual assault by another student-athlete;
   c) Plaintiff was subjected to harassment based on her sex; and
   d) Plaintiff was subjected to a hostile educational environment created by the Defendant's lack of policies and procedures and failure to properly investigate and/or address the sexual assault and subsequent harassment.

25.     Defendant and its officials had actual knowledge of Plaintiff's sexual assault, Plaintiff's assailant, and the resulting harassment of Plaintiff created by its failure to investigate and discipline Plaintiff's assailant in a timely manner and consistent with federal and state law.

26.     Defendant deliberately chose not to investigate Plaintiff's sexual assault after learning of the assault and the identity of the student-athlete involved.

27.     Defendant's failure to investigate the assault, conduct disciplinary hearings, or contact Plaintiff and offer any assistance or resources was clearly unreasonable. Further,

Defendant's affirmative wrongdoing in purchasing Plaintiff's assailant an airplane ticket and helping him flee the state was clearly unreasonable.

28. Defendant's deliberate indifference to Plaintiff's rape exposed her to continued sexual harassment which was so severe, pervasive, and objectively offensive that it effectively barred her access to meaningful educational opportunities and benefits including academics, athletic programs, and on-campus events and activities.

29. Defendant's failure to promptly and appropriately respond to the alleged sexual harassment resulted in Plaintiff, on the basis of her sex, being excluded from participation in, being denied the benefits of, and being subjected to discrimination in the Defendant's education program in violation of Title IX.

30. Defendant failed to take immediate, effective remedial steps to resolve the complaints of sexual harassment, and instead acted with deliberate indifference towards Plaintiff.

31. Defendant persisted in its actions and inaction even after it had actual knowledge of the harm suffered by Plaintiff.

32. Defendant engaged in a pattern and practice of behavior designed to discourage and dissuade students who had been sexually assaulted from seeking prosecution and protection and from seeking to have sexual assaults from being fully investigated.

33. This policy and/or practice constituted disparate treatment of females and had a disparate impact on female students.

34. Plaintiff has suffered emotional distress and psychological damage, and her character and standing in the community has suffered from the harassment fostered as a direct and proximate result of Defendant's deliberate indifference to their rights under Title IX.

B.  **FRAUDULENT CONCEALMENT AND EQUITABLE TOLLING**

35.  Plaintiff incorporates by reference all preceding facts and allegations set forth above in Paragraphs 1 through 21.

36.  Plaintiff's Title IX claim is based on Prairie View A&M's affirmative involvement in manipulating and misinforming Plaintiff of her rights or lack thereof, discouraging Plaintiff from taking further action with respect to the sexual assault, affirmatively assisted Plaintiff's assailant to flee the state in an effort to avoid disciplinary action and evade arrest, and concealing Prairie View A&M officials' misconduct with respect to Plaintiff's sexual assault.

37.  Here, there is no evidence that Plaintiff knew or had reason to know of Prairie View A&M officials' affirmative misconduct until February 11, 2016, when Plaintiff attended the bond hearing for her assailant.

38.  Plaintiff neither knew nor had reason to know that Prairie View A&M officials were engaging in affirmative conduct whereby they manipulated and misinformed sexual assault victims, including Plaintiff, discouraged victims from taking further action with respect to sexual assaults, assisted Plaintiff's assailant to flee the state in an effort to avoid disciplinary action and evade arrest, and concealed Prairie View A&M officials' misconduct with respect to Plaintiff's sexual assault.

39.  Short of someone coming forward and admitting that Prairie View A&M officials covered up information regarding Plaintiff's sexual assault and that Plaintiff's and her assailant's Prairie View A&M coach purchased the assailant a plane ticket and assisted him in fleeing the state, Plaintiff had no way of knowing about Prairie View A&M's affirmative misconduct until February 11, 2016. Notably, the Fifth Circuit recognized that under certain facts, equitable

tolling principles such as fraudulent concealment may prevent the expiration of the limitations period in Title IX cases. *King-White v. Humble ISD*, 803 F.3d 754, 763-64 (5th Cir. 2015).

40. At no point in time prior to February 11, 2016 did Plaintiff understand that Prairie View A&M's deliberate indifference to her sexual assault was the cause of Plaintiff's injuries nor could Plaintiff reasonably have been expected to "inquire further."

41. Therefore, the statute of limitations on Plaintiff's Title IX claim is tolled by fraudulent concealment and equitable estoppel. According, Plaintiff's Title IX claim is timely.

## VI.
## ATTORNEYS FEES

42. As a result of this action, Plaintiff has retained the law firm of Abraham, Watkins, Nichols, Sorrels, Agosto & Aziz to represent her in her claims against Prairie View A&M. Accordingly, Plaintiff seeks attorneys' fees incurred pursuant to Title IX.

## VII.
## JURY DEMAND

43. Plaintiff respectfully demands a jury trial.

## VIII.
## RELIEF REQUESTED

44. For the foregoing reasons, Plaintiff respectfully requests that the Court enter judgment against Defendant consistent with the relief requested herein, and for any and all other relief to which Plaintiff may be justly entitled including actual damages, compensatory damages, court costs, attorneys' fees, and pre- and post-judgment interest.

DATED: February 9, 2018         Respectfully submitted,

**ABRAHAM, WATKINS, NICHOLS, SORRELS, AGOSTO & AZIZ**

*/s/Muhammad S. Aziz*
MUHAMMAD S. AZIZ
Federal ID No. 868540
State Bar No. 24043538
MICHELLE A. CIOLEK
State Bar No. 24082824
Federal ID No. 3030526
800 Commerce Street
Houston, Texas 77002
Telephone: (713) 222-7211
Facsimile: (713) 225-0827
maziz@abrahamwatkins.com
mciolek@abrahamwatkins.com

**ATTORNEYS PLAINTIFF**